UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
YING JING ZENG, *pro se*,            :
                                      :
                    Plaintiff,        :
                                      :      **MEMORANDUM AND ORDER**
        -against-                     :      14-cv-3924 (DLI)(MDG)
                                      :
UNITED STATES OF AMERICA,             :
                                      :
                    Defendant.        :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, Chief Judge:**

On June 23, 2014, plaintiff Ying Jing Zeng ("Plaintiff"), proceeding *pro se*, filed a complaint against the Transportation Security Administration ("TSA") pursuant to the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 2671-80 (the "Complaint"), alleging that TSA officers damaged his property during a security inspection, and also failed to properly repackage Plaintiff's baggage, resulting in additional damage to the property while in transit. At the initial conference before the magistrate judge on November 10, 2014, Plaintiff consented to substitute defendant United States of America ("United States" or "Defendant") for the TSA. Following discovery, Defendant filed the instant motion to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, for summary judgment ("Defendant's Motion" or "Def. Mot.," Dkt. Entry Nos. 30-38), and Plaintiff opposed ("Plaintiff's Opposition" or "Pl. Opp.," Dkt. Entry No. 29). For the reasons set forth below, Defendant's motion for summary judgment is granted and this case is dismissed in its entirety.

## BACKGROUND

**A. Plaintiff's Failure to Follow Local Rule 56.1**

Local Civil Rule 56.1(a) of this district requires a party seeking summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as

to which the moving party contends there is no genuine issue to be tried." S.D.N.Y./E.D.N.Y. Local Civ. R. 56.1(a). The nonmoving party must then provide a counterstatement with "correspondingly numbered paragraph[s]" in response to each of the paragraphs in the moving party's statement. S.D.N.Y./E.D.N.Y. Local Civ. R. 56.1(b). If the opposing party fails to controvert a fact set forth in the movant's Rule 56.1 statement, by citing to admissible evidence, that fact is deemed admitted pursuant to the local rule. *See* S.D.N.Y./E.D.N.Y. Local Civ. R. 56.1(c), (d); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Notwithstanding that general rule, the Second Circuit has emphasized that *pro se* litigants are entitled to "special solicitude . . . when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). Thus, when a *pro se* plaintiff fails to strictly comply with the Local Rules (including Civil Rule 56.1), the Court nonetheless "retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions . . . ." *Wali v. One Source Co.*, 678 F. Supp.2d 170, 178 (S.D.N.Y.2009); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

Despite having been notified of the summary judgment procedures, including the requirement to file a Rule 56.1 statement (*see* Transcript of Status Conference, June 26, 2015, at 3), Plaintiff did not file a formal counterstatement of facts responding to the Rule 56.1 statement in support of Defendant's motion for summary judgment. However, Plaintiff did submit attachments in support of his three-page opposition to Defendant's Motion, which includes Plaintiff's handwritten notes about the purported significance of the attachments. (*See* Dkt. Entry No. 29-1.) The attachments include: (i) a DVD containing the video footage of TSA

Transportation Security Officer ("TSO") Eric Echeverria's deposition along with photographs from that deposition; (ii) time cards from three TSOs, one of which Plaintiff contends is "forg[ed];" (iii) an email exchange between an attorney for Defendant and a production manager at Esquire Deposition Solutions LLC regarding the audio recording of Plaintiff's deposition;[1] and (iv) a shift summary report of TSA Supervisory TSO Konstadinos Raptis ("STSO"), which Plaintiff contends is "fabricated." (*Id.*) Notwithstanding Plaintiff's violation of Local Civil Rule 56.1, this Court has considered these attachments, and Plaintiff's arguments contained therein, in connection with its assessment of Defendant's Motion.

B. **Factual Background**

On November 2, 2013, Plaintiff arrived at John F. Kennedy Airport ("JFK") for a Cathay Pacific Airways ("Cathay Pacific") flight to Hong Kong International Airport. (Declaration of Rachel G. Balaban ("Balaban Decl."), Dkt. Entry No. 33, Ex. 4 (Plaintiff's itinerary).) Plaintiff's final destination was Guangzhou Airport, which Plaintiff would later reach via a subsequent Cathay Pacific flight (operated by Dragon Air) from Hong Kong to Guangzhou. (Balaban Decl. Ex. 4.) Prior to boarding at JFK, Plaintiff checked three items with a Cathay Pacific agent, one of which was enclosed with a predominantly pink cardboard box for a Barbie "Gourmet Kitchen" set (the "Barbie Box"). (Deposition Transcript of Ying Jing Zeng ("Zeng Tr."), Balaban Decl. Ex 1, at 29-30; Babalan Decl. Ex. 2 (photos of the Barbie Box and items contained therein).) Inside the Barbie Box, Plaintiff had placed a smaller cardboard box containing what Plaintiff describes as a 45 pound "Antique Jade" object in the shape of a dragon (the "Dragon"), along with Styrofoam to keep the Dragon secure. (Compl. at 2, 4; Zeng Tr. at 88-90.) When Plaintiff checked in for his

---

[1] The email exchange appears to have been produced to Plaintiff by the government in response to a May 1, 2015 order of the magistrate judge. The exchange reflects that, due to an audio malfunction, there is no audio recording of the first half of Plaintiff's deposition. (*Id.* at 11.)

3

flight he told a Cathay Pacific agent that he wanted to take the Barbie Box on the plane with him because it was "very expensive" and "very fragile," but was told by the agent that it was too big to bring on board. (Zeng Tr. at 34-36.) Plaintiff made no inquiries to ensure the Dragon would travel securely, but the agent did place two red "FRAGILE" stickers on the Barbie Box prior to checking it. (*Id.* at 36; Balaban Decl. Ex. 2.) Plaintiff never sought to obtain insurance on the Dragon, for travel or otherwise. (Zeng Tr. at 74-75; Babalan Decl. Ex. 2.)

Upon arriving in Guangzhou on November 3, Plaintiff learned that two of his three checked items, including the Barbie Box containing the Dragon, did not arrive with him to the Guangzhou airport. (Babalan Decl. Ex. 3 (email from Plaintiff to TellTXA-JFK@tsa.dhs.gov, dated Nov. 11, 2013).) On November 4, both items were delivered by a third-party delivery company, at which point Plaintiff discovered the Dragon had been damaged. (Compl. at 2; Babalan Decl. Exs. 2, 3.) Plaintiff has acknowledged that he does not know how or where the item was damaged. (Compl. at 2 ("The [Dragon] may have been damaged again during the transport processing between JFK and Hong Kong airport); Babalan Decl. Ex. 3 ("I am not sure this terrible thing was happen [sic] in USA, or in Hong Kong."); Zeng Tr. at 62 ("It was not possible for me to know what actually happened.").) The only evidence that has been presented to the Court regarding how the Dragon was handled between when Plaintiff dropped off the Barbie Box with Cathay Pacific and when he received it from the third-party delivery company on November 4, are the affidavits of TSO Echeverria, STSO Raptis, and John Allen, the TSA's Assistant Federal Security Director for Screening ("AFSD-S") at JFK. (*See* Declaration of Eric Echeverria ("Echeverria Decl."), Dkt. Entry No. 36; Declaration of Konstadinos Raptis ("Raptis Decl."), Dkt. Entry No. 35; Declaration of John Allen ("Allen Decl."), Dkt. Entry No. 34.)

Although no relevant video footage is available (Allen Decl. ¶ 7; *see also* Dkt. Entry No. 13 (ordering Defendant to provide an affidavit to corroborate the lack of video footage)), the TSA acknowledges that the Dragon was inspected by a TSO, whom the TSA was not able to identify during its investigation of Plaintiff's complaint. (Defendant's Statement of Undisputed Material Facts Pursuant to Local Civ. R. 56.1, Dkt. Entry No. 32, ¶ 64.) TSO Echeverria, who worked as a screener for checked baggage, recalls seeing both the Barbie Box and the Dragon during his November 2, 2013 shift, at an inspection area near his own. (Echeverria Decl. ¶ 7.) At one point, TSO Echeverria walked over to the inspection table on which the Barbie Box had been placed and "looked in the top of the box and could see the top of what appeared to be a dragon sculpture inside." (*Id.* at ¶ 9.) He recalled thinking that "the packaging of the dragon sculpture in the 'Barbie' box appeared wholly inadequate to protect such a heavy and fragile item. The dragon sculpture appeared to be protected only by a thin cardboard 'Barbie' box and a thin layer of Styrofoam. The dragon sculpture barely fit within the box and provided little room for cushioning." (*Id.* at ¶ 10.) At another point when the Dragon lay atop the table outside of the box, TSO Echeverria was "able to see the entire dragon sculpture and observed that it was fully intact." (*Id.* at ¶ 14.) TSO Echeverria next "noticed the 'Barbie' box standing vertically on the inspection table, where a TSO was re-taping the box." (*Id.* at ¶ 15.) The last time TSO Echeverria saw the Barbie box was "on the conveyor belt which runs along the outside of the TSA screening area." (*Id.* at ¶ 17.) TSO Echeverria noted that at no point did he "see any damage to the dragon sculpture" or "hear or see the 'Barbie' box or the dragon sculpture being dropped." (*Id.* at ¶¶ 20-21.)

STSO Raptis, who was the assigned supervisor of the inspection area that day, does not recall ever seeing the Dragon or Barbie Box, but reported that he did not record any significant

events in his "Shift Summary Report" other than three instances when he recorded the start of new shifts. (Raptis Decl. ¶ 7.) STSO Reptis noted that a "Shift Summary Report" would include "any significant activities," including "documenting any items in passenger checked baggage that may have been damaged during a TSA baggage inspection." (Raptis Decl. ¶ 3.)

### C. The Complaint

On June 14, 2014, Plaintiff filed the instant Complaint, alleging that TSA officers "broke" the Dragon "in their inspection processing." (Compl. at 2.). Specifically, Plaintiff alleges that TSA officers opened his bag despite knowing "it was a large size Antique Jade" and also "irresponsibly and wrongfully repackaged the baggage." Plaintiff's theory is that the Dragon was damaged when the TSA officer "pour[ed]" out the contents of the Barbie Box on to the floor. (Compl. at 4 ("So, THE JFK's 'TSA' OFFICER used the easy way to pour out the Jade to make the inspection . . . the 45 lb JADE HIT THE FLOOR."); *see Id.* (diagram depicting how Plaintiff believes the TSA officer poured the contents of the Barbie box on to the floor).)

Although Plaintiff does not list any causes of action, for purposes of assessing Defendant's Motion, the Court construes Plaintiff's complaint as one sounding in negligence under New York law. Plaintiff seeks $1,000,000 in damages: $500,000 for the damage to the Dragon and $500,000 for a "Fund for the Protection of the World Cultural Heritage."

### D. Defendant's Motion

Defendant asks this Court to dismiss Plaintiff's claims under two theories: (i) the Court lacks subject matter jurisdiction over this case pursuant to § 2680(a) of the FTCA because the United States has not waived its sovereign immunity from claims based on the discretionary decisions of TSA employees (Def. Mot. 1-2, 6-17); or (ii) Defendant is entitled to summary judgment because "plaintiff can prove no set of facts that would support a claim that the damage

caused to the [Dragon] was proximately caused by any negligent act or omission of a federal employee." (*Id.* at 2, 18-25.)

As noted above, Plaintiff has not contested any of Defendant's evidence through an opposing 56.1 statement, but through his opposition—which consists almost entirely of unsupported speculation—Plaintiff takes issue with a small portion of the evidence Defendant has presented. Plaintiff's arguments principally consist of the following: (i) during TSO Echeverria's deposition he appeared to be unfamiliar with TSA supervisor Mr. Raptis; (ii) the "Shift Summary Report" prepared by STSO Raptis appears to have been forged; (iii) the fact that the Barbie Box was delayed in arriving suggests Defendant caused the damage to the Dragon; and (iv) the time card produced for STSO Raptis appears to have been forged because it consists of entries for only one day of work as compared to two other time cards produced, both of which cover a six-day period. (*See* Pl. Opp.)

For the reasons discussed below, none of Plaintiffs arguments in opposition to Defendant's motion has any merit. Although the Court finds that it has subject matter jurisdiction over this case, Defendant is entitled to judgment as a matter of law, as Plaintiff's submissions have created no genuine dispute as to any material fact concerning his negligence claim.

## DISCUSSION

### I. Defendant's Motion to Dismiss

#### A. Legal Standards for Rule 12(h)(3) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss an action." In assessing a Rule 12(h)(3) motion, the Court applies the same standards governing a motion to dismiss brought pursuant to Rule 12(b)(1). *Greystone Bank v. Tavarez*, 2010 WL 3325203, at *1 (E.D.N.Y. Aug.

19, 2010) ("Except for the pre-answer limitation on Rule 12(b)(1) motions, the distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same standards are applicable to both types of motions.") A case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009). The plaintiff, as the party seeking to invoke this Court's jurisdiction, not the movant, bears the burden or demonstrating that subject matter jurisdiction is proper. *Scelsa v. City Univ. of New York*, 76 F.3d 37, 40 (2d Cir. 1996). "A plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence." *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

In reviewing the complaint, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Accordingly, the Court interprets the amended complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). While the heightened pleading standards set by *Twombly* and *Iqbal* are not necessarily dispensed with in considering *pro se* submissions, the court still must construe *pro se* complaints liberally. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nevertheless, this liberal construction requirement does not absolve a *pro se* plaintiff of the obligation to "'plead sufficient facts to state a claim that is plausible on its face.'" *Chukwueze v. NYCERS*, 891 F. Supp.2d 443, 450 (S.D.N.Y. 2012) (quoting *Bodley v. Clark*, 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012)). Because Plaintiff is a *pro se* litigant, the Court, in deciding this motion, has construed Plaintiff's papers broadly and interpreted them to raise the strongest arguments

8

suggested. *Weixel v. Board of Education of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002).

### B. The Discretionary Function Exception to the FTCA

"Under traditional principles of sovereign immunity, the United States is immune from suit except to the extent the government has waived its immunity." *Coulthurst v. United States*, 214 F.3d 106, 108 (2d Cir. 2000). The FTCA, adopted by Congress in 1946, waived sovereign immunity for certain claims based on the negligence of federal government employees and generally authorized Plaintiffs to sue to the United States for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). However, the FTCA included a significant exception to this waiver, providing that the United States shall not be liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The United States Supreme Court has described this exception—known as the "discretionary function exception" ("DFE")—as the "boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

The Supreme Court decisions issued since the FTCA's passage have established a two-part test to evaluate whether the DFE bars a suit against the United States:

9

> (1) the acts alleged to be negligent must be discretionary, in that they involve an "element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy'" or susceptible to policy analysis.

*Coulthurst*, 214 F.3d at 109 (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). In applying the exception, courts evaluate the conduct in light of "Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536-37 (citing *Varig Airlines*, 467 U.S. at 814); *see also Gaubert*, 499 U.S. at 335 (Scalia, J., concurring) ("Unfortunately, lower courts have had difficulty in applying this test.").

With respect to the second prong of the test, the Supreme Court has advised that, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. However, a Plaintiff may survive a motion to dismiss where the facts alleged challenge actions that "are not the kind of conduct that can be said to be grounded in the policy" of the statutes or guidelines at issue. *Id.* at 324-25. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 235.

### C. Application

Defendant argues that the DFE bars Plaintiff's claims because the "TSA maintains the discretion to determine the manner in which checked baggage is screened and subsequently repackaged and such decisions are grounded in public policy." (Def. Mot. at 9.) To support its argument that the allegedly negligent conduct set forth in the Complaint necessitates a policy

analysis, Defendant attaches the affidavit of AFSD-S Allen, which describes the TSA's Standard Operating Procedures ("SOP") that the TSOs are to consider when screening baggage. (*See generally* Allen Decl.) As set forth in AFSD-S Allen's declaration,[2] SOP's stated purpose is to "(1) screen and inspect baggage in order to safeguard aircraft from any prohibited explosive or other weapon, and (2) make certain that screening procedures provide even and efficient treatment for all passengers." (Allen Decl. at ¶ 25.) In addition, the declaration notes that the "SOP necessarily provides security screeners with wide discretion as to whether additional screening measures are required, given the high volume of baggage processed and the unpredictable nature of security threats that could emanate from such baggage." (*Id.* ¶ 30.) The declaration further provides that baggage should be repacked "carefully and neatly" but need not be repacked "in exactly the same manner in which they originally were packed by the passenger." (*Id.* at ¶ 32; *see* ¶¶ 33-37.)

In light of these policy considerations, Defendant argues that "Plaintiff's claim that TSA somehow should have handled the Object in a different manner necessarily infringes on TSA's discretion to weigh these varied policy considerations and determine the optimal allocation of its personnel's time and resources." (Def. Mot. at 13.) However, Defendant's argument misconstrues the heart of *pro se* Plaintiff's allegations (however poorly drafted they may be), and misapprehends the case law concerning the scope of the DFE.

In accordance with the *Berkovitz* and *Gaubert* decisions and the Second Circuit Court of Appeals' subsequent guidance in *Coulthurst*, this Court must assess the *nature* of the allegedly negligent actions, as those are described in the Complaint, to see whether those actions are subject to policy considerations. *Gaubert*, 499 U.S. at 325; *see Coulthurst*, 214 F.3d at 109. As the

---

[2] The Allen Declaration notes that the exact details of the SOP cannot be publicly disclosed as it has been designated as "Sensitive Security Information."

11

Supreme Court observed in *Gaubert*, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but are not within the discretionary function exception because these acts cannot be said to be based on the purposes that the [statute, regulation or guideline] seeks to accomplish." *Id.* at 325 n.7 (explaining that a government official negligently driving a car while on official business would not be covered by the DFE because the decisions in exercising discretion "can hardly be said to be grounded in regulatory policy"). For example, in *Coulthurst*, which involved injuries allegedly caused by malfunctioning gym equipment, the Second Circuit contrasted the hypothetical negligence of the official who determined how frequently to inspect, which would be a decision grounded in public policy, with the hypothetical negligence the of the official assigned to inspect the machine, which "may in laziness or haste have failed to do the inspection claimed" or have been "distracted or inattentive" in performing the inspection. *See Coulthurst*, 214 F.3d at 109.

Here, the Court finds that while some of what Plaintiff alleges is subject to DFE protection, aspects of the Complaint to fall in the latter category of the *Coulhurst* hypothetical. Specifically, the DFE protects Defendant from any allegation that Defendant was negligent in selecting Plaintiff's bag for inspection or opening it "even though [Defendant] knew it was a large size Antique Jade." (*See* Comp. at 2.) The decision of whether or not to select a certain piece of baggage for inspection is clearly grounded in the public policy of keeping airports and airplanes safe. The DFE also shields Defendant from Plaintiff's unsupported claims that Defendant's employees "irresponsibly and wrongfully repackaged the baggage," as the manner in which bags are repacked are discretionary acts guided by policy considerations to efficiently and effectively inspect baggage. (*See* Allen Decl. ¶¶ 32-35).

However, given the liberal pleading standard conferred to *pro se* plaintiffs, the Court also must read the Complaint to allege that TSA employees "broke" Plaintiff's Dragon due to their own carelessness or inattentiveness during the inspection. (*See* Compl. at 2.) In this Court's view, this type of carelessness, which conceivably could be found by a trier of fact if the TSA officer "pour[ed]" out the Dragon onto the floor prior to inspection, as Plaintiff alleges (*see* Compl. at 4), is not the type of tort that is protected by the DFE. Under the reasoning set forth in *Coulthurst*, Plaintiff's theory of negligence sounds more in "laziness or haste" or "distract[ion] or inattentive[ness]," than a "considered judgment grounded in . . . policy." *Coulthurst*, 214 F.3d at 109, 111.

In finding the DFE does not apply to this type of negligence, the Court declines to hold that the TSA enjoys a broad protection over all claims concerning "the manner in which checked baggage is screened and subsequently repackaged." (*See* Def. Mot. at 9.) As discussed above, this Court reads the case law to allow suits against the United States where the allegations are grounded in acts that are sufficiently disconnected from the policy considerations of the agency. This holding does not conflict with *Pudeler v. United States*, 2013 WL 6511937, at *5 (D. Conn. Dec. 12, 2013), which Defendant cites to support its claim of immunity from suits that "challenge how TSA prioritizes the components of its screening procedures." (Def. Mot. at 13-14.) In *Pudeler*, the only case from a court in this Circuit cited by Defendant in support of this proposition, the court expressly construed the plaintiff's complaint to allege conduct that is grounded in TSA policy: "According to plaintiff, the nature of the conduct at issue is a TSA employee's failure to appropriately control the flow of individuals through the airport's security checkpoint, resulting in a 'bottleneck' in the area where people exiting the screening machine gather their belongings." *Pudeler*, 2013 WL 6511937, at *5.

Moreover, the Court's ruling is consistent with the decisions from other courts in this district when applying the DFE to actions that are only tenuously linked to agency policy. *See, e.g.*, *Valet v. United States*, 2006 WL 624897, at *2 (E.D.N.Y. Mar. 9, 2006) ("However, the careless, unreasonable and excessively noisy actions allegedly taken by the USPS employees while carrying out their duties at the postal facility's loading dock do not satisfy the second step of the DFE analysis."); *Wright v. United States*, 162 F. Supp.3d 118, 130 (E.D.N.Y. 2016) ("Here, plaintiff's allegations that [the probation officer], among other things, negligently failed to act promptly or appropriately when notified that Wright had an injury to his ankle[, where an electronic monitoring bracelet had been placed,] are analogous to the claims stemming from a failure to act raised in *Coulthurst*.")

To the extent the cases cited by Defendant from courts in other circuits can be read to prohibit all claims relating to a TSA employee's carelessness during a screening procedures without regard to the nature of the conduct, which is an issue not yet decided by the Second Circuit, the Court respectfully disagrees that the DFE has conferred such broad protection. *See Rao v. United States*, 2010 WL 3607143, at *3 (D. Mass. Sept. 9, 2010) (finding the DFE barred claims for "failing to (1) provide an appropriate repository for passengers to use after passing through security and collecting their belongings, and/or (2) have an employee available to take the bins from passengers after they've passed through security, and/or (3) remove the plastic bin from the floor after it was placed there by a passenger"); *Sarkany v. United States*, No. 11-cv-11399, Dkt. Entry No. 32 (E.D. Mich. Feb. 23, 2013) (finding the DFE barred a claim arising out of an injury allegedly suffered during a pat down procedure).

\* \* \*

Having found that Plaintiff's claims are not subject to dismissal for lack of subject matter jurisdiction, the Court considers below whether a genuine dispute exists as to any material fact concerning Plaintiff's negligence claim. For the reasons discussed, the Court finds there is not.

## II. Defendant's Motion for Summary Judgment

### A. Legal Standards for a Motion for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citations and internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted

by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (internal citation omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal citations and quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

### B. Application

As noted above, the Court construes Plaintiff's complaint to assert a cause of action for negligence. "In order to establish a *prima facie* case of negligence under [New York law], a claimant must demonstrate that: '(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of

that breach.'" *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995)).

Plaintiff's negligence claim is based on the theory that TSA employees were careless in inspecting the Dragon, which resulted damage to the object. (Compl. at 2, 4.) Plaintiff's only basis for these assertions is that: (i) a TSA inspection of the Dragon occurred; and (ii) the object was delivered to Plaintiff two days later in a damaged condition. However, setting aside whether a legal duty between Plaintiff and Defendant existed, Plaintiff has not proffered any evidence whatsoever that that any actions by Defendant's employees caused the alleged damage. Indeed, throughout the course of this case, Plaintiff has acknowledged multiple times that he does not know the cause of the damage. (Compl. at 2 ("The [Dragon] may have been damaged again during the transport processing between JFK and Hong Kong airport."); Babalan Decl. Ex. 3 ("I am not sure this terrible thing was happen [sic] in USA, or in Hong Kong."); Zeng Tr. at 62 ("It was not possible for me to know what actually happened.").) Moreover, not only has Plaintiff offered no evidence on causation, but the only arguments presented on any issue (*see* Background § D, p. 7, *supra*), consist almost entirely of unsupported allegations that certain documents disclosed during discovery were doctored by Defendant.

As Defendant correctly points out, in situations where there may be "several possible causes of injury, for one or more of which defendant is not responsible, plaintiff cannot recover without proving the injury was sustained wholly or in part by a cause for which the defendant was responsible." *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 179 (2d Cir. 2013) (quoting *Bernstein v. City of New York*, 69 N.Y.2d 1020, 1021, 517 N.Y.S.2d 908, 511 N.E.2d 52 (1987)). Given that Plaintiff has not presented any evidence on causation, his negligence claim must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. Accordingly, this action is dismissed in its entirety, with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2016

/s/
DORA L. IRIZARRY
Chief Judge